UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:00CR263(JCH) |
| | : | |
| v. | : | |
| | : | |
| TERRENCE BOYD | : | November 23, 2005 |

**GOVERNMENT'S MEMORANDUM IN AID
OF POST-*CROSBY* PROCEEDINGS ON REMAND**

The Government respectfully submits this memorandum in response to the Court's order of October 25, 2005, inviting written submissions from the parties on whether the Court would have imposed a non-trivially different sentence if the Sentencing Guidelines had been advisory, and otherwise in aid of proceedings on remand from the United States Court of Appeals for the Second Circuit.

**I.      Procedural History**

On November 9, 2001, the defendant pleaded guilty to possession of cocaine base with intent to sell in violation of 21 U.S.C. § 841(a)(1) & 841(b)(1)(B). The defendant's guilty plea exposed him to a statutory minimum five-year term of imprisonment. In connection with his guilty plea, the defendant stipulated as follows:

> The Government and the defendant stipulate and agree that the defendant is a Career Offender pursuant to U.S.S.G. § 4B1.1 and that the corresponding base offense level is 34. The parties further stipulate and agree that, assuming a three-level reduction for acceptance of responsibility, the defendant's total offense level is 31 and that the corresponding guidelines range is 188 to 235 months imprisonment. The defendant reserves the right to argue for a downward departure.

At the sentencing hearing on February 6, 2002, the defendant did in fact argue for a downward departure. The Court recognized its authority to exercise its discretion to depart

downwardly from the career offender guidelines, but declined to exercise that discretion. Sentencing Transcript at 33 ("S. Tr. at __."). The Court determined that the defendant was properly characterized as a career offender under the Sentencing Guidelines, and proceeded to sentence the defendant to a period of incarceration of 188 months, to be followed by a five-year term of supervised release. S. Tr. at 34-36. The defendant filed a notice of appeal on February 13, 2002.

On July 18, 2005, the United States Court of Appeals for the Second Circuit ordered a limited remand in this case, in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and the Court of Appeals' decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). This Court then issued an order, on October 25, 2005, inviting simultaneous briefing from the parties on the question whether it would have imposed a non-trivially different sentence in the case if the Sentencing Guidelines had been advisory. This is the Government's submission in that regard.

## II.    The Purpose of a *Crosby* Remand

In *Booker*, the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. §3553(b)(1), thus declaring the Guidelines "effectively advisory." *Booker*, 125 S. Ct. at 757. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." *Id*. at 765-66.

In *Crosby*, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to *Booker* "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." *Crosby*, 397 F.3d at 117. In this respect, the Court of Appeals explained that a remand would be necessary to learn "whether a sentencing judge would have imposed a materially different sentence, *under the circumstances existing at the time of the original sentence*, if the judge had discharged his or her obligations under the post-*Booker/Fanfan* regime and counsel had availed themselves of their new opportunities to present relevant considerations." *Id*. (emphasis added). Arguments addressing factual matters that have arisen since sentencing are immaterial to the question presented, as the Court must determine whether to re-sentence based solely on "the circumstances existing at the time of the original sentence." *Id*.

### III. There is No Compelling Reason to Re-Sentence in this Case Because the Court Carefully Considered All of the Relevant Sentencing Considerations at the Time of Sentencing.

Sentencing in the post-*Booker* regime, as explained in *Crosby*, now involves two analytic stages: first, a determination of the applicable guideline range (including any departures); and second, a determination of whether in light of the Guidelines and the other factors listed in 18 U.S.C. §3553(a), there is any reason to impose a non-Guidelines sentence. *Crosby*, 397 F.3d at 113. Here, the record reflects that the Guidelines were properly calculated under the career offender provisions, as stipulated by the parties, that the Court correctly declined to exercise its discretion to depart downward from the applicable guidelines, and that the Court considered all

the relevant statutory factors in reaching its decision to impose a sentence of 188 months' imprisonment.

**Discussion**

The defendant's Guidelines were calculated in paragraphs 38-56 of the Pre-Sentence Report ("PSR"), as follows:

Offense Level Computation

| | |
|---|---|
| Base Offense level:  Drug Quantity (33.1 grams cocaine base) U.S.S.G. §2D1.1(c)(6) | 28 |
| Specific Offense Characteristic: None | 0 |
| Adjustment for Role in the Offense: None | 0 |
| Victim Related Adjustment: None | 0 |
| Adjustment for Obstruction of Justice: None | 0 |
| Adjusted Offense Level (Subtotal): | 28 |
| Chapter 4 Adjustments: The defendant is a career offender pursuant to U.S.S.G. § 4B1.1.  The offense level is 34 in accordance with U.S.S.G. § 4B1.1(B), because it is greater than the offense level otherwise applicable. | 34 |
| Adjustment for Acceptance of Responsibility: | -3 |
| Total Offense Level: | 31 |

PSR ¶¶ 39-47.

The PSR also calculated the defendant's criminal history category. PSR ¶¶ 48-56. The PSR attributed 18 criminal history points to the defendant, placing him squarely within criminal history category VI, which applies to anyone with 13 or more criminal history points. PSR ¶ 56. The defendant was correctly classified as being in criminal history category VI for the independent reason that he was a career offender under the Guidelines – as stipulated by the

4

parties in the plea agreement.  Under U.S.S.G. §4B1.1, a career offender is automatically placed in criminal history category VI.

**Defendant's Prior Criminal Record**

As the PSR correctly concluded, the defendant had six prior felony convictions, including three separate incidents resulting in felony narcotics convictions and two robbery convictions. PSR ¶¶ 49-50, 52-54.  The defendant's two robbery convictions plus his felony conviction for sale of narcotics triggered the career offender classification.

The PSR set forth details of the 1990 robberies.  The first occurred on March 20, 1990, when the defendant and another individual were reported to have robbed a victim of jewelry said to be valued at $645.  The incident began while the three were riding on a bus.  The defendant is reported to have asked to see the victim's ring.  After the victim handed it to the defendant, the victim was told he would not be getting the ring back.  The defendant's cohort patted his jacket and told the victim there was nothing he could do about it.  This gesture caused the victim to believe that this other person was carrying a weapon.  The victim was then told to get off the bus if he wanted his ring back.  The victim complied, at which point the other robber is reported to have taken additional rings from the victim.  The defendant's cohort is reported to have advised the victim that he had been held up by the "Stick Up Boys."  The victim said he heard one of the robbers refer to the other as Terrence.  The victim heard that the person identified as "Terrence" had come from court that day.  The police later determined that the defendant, Terrence Boyd, was on a court docket list that day.  PSR ¶ 52.  The defendant was convicted of robbery, second, on July 19, 1990, and sentenced to four years' jail, with two years to serve, consecutive to another sentence.  He was eventually released to community corrections on September 13, 1990.

PSR ¶ 52.

Just over a month after his release, the defendant participated in another robbery. PSR ¶ 53. Specifically, the PSR noted that the defendant was positively identified along with another individual as two of three persons involved in an armed robbery that took place on October 24, 1990. According to the PSR, police reports described an incident where the defendant and two other individuals approached a couple and requested their money. The PSR noted that a handgun was brandished by one of the defendant's companions. One of the individuals, matching the defendant's description, is reported to have struggled with the female victim, eventually pulling her purse away. Money was reported taken from the purse. After the robbers ran away, the victims contacted the police, who apprehended the defendant and another person a short while later. Both victims are reported to have identified them as being two of the robbers. The police did not find a weapon. The defendant did have a $100 bill in his pocket. PSR ¶ 53. The defendant eventually pled guilty to robbery, second, and, on March 4, 1991, received a sentence of four years' jail. He was released to community corrections on November 3, 1992.[1] PSR ¶ 53.

---

[1] At sentencing, after the Court expressed its concern about the defendant's participation in two robberies, the defendant attempted to call into question his second robbery conviction. S. Tr. at 17, 33-34. He claimed through his attorney that his second robbery conviction was a case of mistaken identity. S. Tr. at 17. Referring to the defendant's last-minute denial, defense counsel correctly noted at sentencing in this case that "[o]bviously, we can't retry that here today." S. Tr. at 17. While the Court noted that it "may be sympathetic to Mr. Boyd," it correctly concluded that it was not in a position to re-litigate the defendant's underlying robbery conviction. S. Tr. at 17, 33-34. The defendant was represented by counsel in connection with his robbery conviction, PSR ¶ 48, so he could not collaterally attack that conviction in his federal sentencing proceeding. *See Custis v. United States*, 511 U.S. 485, 497 (1994) (prior state convictions used to enhance a defendant's sentence under the Armed Career Criminal Act could not be collaterally attacked in federal sentencing proceeding); *United States v. Jones*, 27 F.3d 50, 52 (2d Cir. 1994) (no collateral attack on prior state conviction used to enhance federal sentence under the career criminal provisions of the Sentencing Guidelines). His belated attempt to avoid responsibility for his own criminal history was correctly rejected.

The PSR also listed the defendant's felony narcotics convictions. PSR ¶¶ 49-50, 54. They included two felony possession convictions entered on September 27, 1989 involving separate incidents occurring in July and August 1989. The defendant received three-year sentences on each count, to run concurrently. PSR ¶¶ 49-50. The PSR also listed convictions entered on October 27, 1993 for felony possession of narcotics and possession of narcotics within 1500 feet of a school, for which the defendant received one-year and two-year jail sentences, respectively. PSR ¶ 54. With respect to these latter convictions, the PSR, apparently referencing police reports, indicated that after the defendant was seen completing a drug transaction, he was arrested. Officers then seized his drug stash, which was reported to have contained 16 envelopes containing heroin. PSR ¶ 54.

According to records from the Connecticut Department of Corrections, which were submitted as Exhibit A to the Government's Response to Defendant Terrence Boyd's Memorandum in Aid of Sentencing, dated February 5, 2002, the defendant served at least four separate jail sentences during the following periods:

---

To the extent the Court wishes to review the underlying police incident reports, the Government has attached hereto the copies in its file, which include various police incident reports, a written statement of one of the victims, and statements from the defendant and the other individual arrested with the defendant. A limited amount of personal identifying information has been redacted. The victim's statement indicates that the individual who took his wife's purse threw it to one of the other robbers, who removed $1,000 in $100 bills. Some of the documents indicate that a fourth person may also have participated in the robbery. The defendant admitted in his statement that he was present for the robbery, but sought to minimize his role in the crime.

1. September 27, 1989 through February 2, 1990;

2. June 21, 1990 through September 13, 1990;

3. October 25, 1990 through November 3, 1992;

4. May 12, 1993 through September 16, 1996.

These records reflect not only that the defendant spent a total of approximately six years in prison between 1989 and 1996 on prior state convictions, but also that increasingly stiffer jail sentences failed to deter him from engaging in criminal conduct.

**<u>The Offense of Conviction and Sentencing</u>**

With respect to the crime of conviction, the PSR noted that, by early 2000, the defendant was involved in substantial crack sales on a number of occasions to undercover agents and/or confidential sources. PSR ¶¶ 26-35. During a string of undercover controlled purchases in the winter of 2000, the defendant was involved in selling crack in half-ounce and ounce quantities – quantities consistent with wholesale distribution for resale to drug users. The defendant's crack sales involved a total weight of 33.1 grams. PSR ¶ 34. When asked during the pre-sentence interview about his selling crack, the defendant is reported to have responded that "all I thought about was the money I was making, I was doing what I had to do to survive." PSR ¶ 70.

As noted above, the defendant stipulated in the plea agreement to being a career offender subject to a guideline range of 188 to 235 months in prison. At sentencing, the defendant sought a downward departure arguing that the applicable guideline range significantly over-represented the seriousness of the his criminal history or the likelihood of recidivism. Specifically, he claimed that (1) his record involved a string of "low level street sales of narcotics," (2) his record was amassed largely before he was 21 years old, and (3) his "biological father had no role in

8

raising him," and his mother's drug addition as well as his own negatively affected him. Defendant's Sentencing Memorandum in Aid of Sentencing, dated February 4, 2002 ("Def. Mem.") at 5-6; *See, e.g.*, S. Tr. at 20-21, 24-25.

The Court ultimately rejected the defendant's arguments and agreed with the proposition that there was a need for a lengthy sentence in light of the defendant's demonstrated recidivism. The Court made a number of comments during the sentencing hearing which supported this conclusion. For example, the Court noted that the defendant had previously served substantial prison terms on his prior convictions, describing how those terms increased in duration over time and resulted in his serving approximately six years in prison prior to the instant offense. S. Tr. 17-18. The Court noted: "We have someone who seems to go to jail for not long periods at the beginning, admittedly while young, but comes out and doesn't seem to have been deterred, goes out and commits another crime, comes out, commits another crime." S. Tr. at 18. The Court made this same point later, describing the defendant's history this way: "It's sort of a continuous, commit a crime, go to jail, commit a crime, go to jail, commit a crime, go to jail." S. Tr. at 21.

The Court contrasted the defendant's situation to that of someone who had accumulated a number of criminal history points as a young person, but then stopped his criminal conduct for a lengthy period, or to a street dealer who may also be an addict and who was regularly arrested for less significant offenses causing him to accrue "lots of little points," but who is not fairly categorized as a career offender. S. Tr. at 19-20. In making this contrast, the Court went on to say:

> The troublesome thing I think with Mr. Boyd is that you can look at the first two of his offenses and you might put him in that category I just described but when you've got two robberies, one of which clearly involved a gun, whether the first

9

> one did or not is unknown, so I have to assume it didn't. The second one did. That's a very serious offense. And then I've got him, you know, then he's back when he gets out from those offenses, he's back selling again. And, you know, he's no longer a young man.

S. Tr. at 20.

After considering the defendant's departure arguments, the Court noted that it had the discretion to depart below the stipulated guideline range of 188 to 235 months in prison, adding, however, that it would decline to exercise that discretion here. S. Tr. at 33. In rejecting the defendant's arguments and imposing a sentence of 188 months, the Court focused on the severity of the defendant's criminal history and the fact that he had previously spent substantial time in prison, saying:

> The Court could not conclude that a person who committed two robberies, one of which was armed and involved some physical application of physical force to one of the victims and, in addition, is convicted of, prior to this offense, selling drugs, *I could not conclude that that person is someone who's not within the zone of what Congress or [the] Sentencing Commission intended by career offender*.
>
> The Court views the robbery offenses as serious. I understand, and I've heard the argument of the defendant that they were committed at a relatively young age, but they were committed when the defendant was 20 and the Court is not persuaded that that age is so young as to somehow mitigate against the seriousness of the offense themselves.
>
> Further, they were committed after the defendant had served some time in prison on prior offenses, which tells me, this Court, something about whether the defendant is to be deterred by sentencing.

S. Tr. at 34-35 (emphasis added).

The Court further addressed the defendant's argument that the sentence should be reduced because many of his prior criminal acts had occurred at a young age by saying:

10

> The Court recognizes, as the defense counsel has argued, very clearly, that a number of the points were earned – well, quite a few were earned – at age 20 or younger but I think probably the better argument is some were earned at age 18.
>
> However, he has a total of 18 points and even if the Court were to somehow diminish some of those early points, shall we say, because of age, the Court could not, the Court doesn't see a sound basis upon which to exercise its discretion to conclude that somehow his points in reality, what he has done in his criminal history, reflects points more the nature of 12 or less.

S. Tr. at 35.

A review of the record in this case demonstrates that, at the time of sentencing, the Court conducted a thorough analysis of all the relevant sentencing factors in 18 U.S.C. § 3553(a), including the appropriate guideline range, and imposed a sentence of 188 months' imprisonment based on a correct application of those factors. Indeed, at sentencing the Court articulated its reasons for imposing the specific sentence it did, noting:

> My reasons would be that I think that the term of 188 months is sufficient to satisfy the four objectives of sentencing as set forth in the statute. I further had consideration of the fact that Mr. Boyd's youth and family background, his mother, et cetera. So for those reasons, determined to sentence him at the lowest end of the range possible.

S. Tr. at 38.

The record does not support the conclusion that the Court would have imposed a materially different sentence had the Guidelines been merely advisory. At sentencing, the Court segued into the defendant's downward departure argument by noting, in connection with calculating the guideline range, that it "would be bound by the sentencing guideline range of 188 to 235, absent extraordinary circumstances." S. Tr. at 6. But there is no reflection that the Court considered a sentence at the bottom of the range to be inconsistent with what it believed was the appropriate sentence. Indeed, by rejecting the defendant's call for a departure, the Court made

clear that the guideline range represented a proper balance of sentencing factors here. The Court plainly understood it had discretion to depart downward from the career offender guideline range, yet chose not to do so. S. Tr. at 30-33. Had it believed that the defendant merited a lesser sentence, surely it would have exercised its discretion to depart downward and impose one.

The record makes clear that the sentence at the bottom of the guideline range was the correct sentence here given the defendant's significant criminal history and the fact that prior sentences had failed to curb his criminal activities. The sentence reflected the "nature and circumstances of the offense," § 3553(a)(1) – a serious drug-trafficking offense; the need for the sentence to provide "adequate deterrence to criminal conduct," § 3553(a)(2)(B); and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A). It also reflected the Court's consideration of the defendant's personal circumstances, as required by § 3553(a)(1).

In the end, the sentence imposed served as an appropriate balance of all the factors set forth in 18 U.S.C. § 3553(a) and was eminently reasonable. There is no reason apparent from the record why the Court would have imposed a non-trivially different sentence if the Sentencing Guidelines had been advisory at the time of sentencing. Accordingly, there is no reason to re-sentence the defendant.

**IV.     Conclusion**

For the foregoing reasons, in conformity with the procedures outlined in *Crosby*, this Court should indicate for the record that, after consideration of the defendant's sentencing range under the Guidelines and all of the factors listed in 18 U.S.C. § 3553(a), the defendant should not be re-sentenced.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


PAUL A. MURPHY
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT26654
UNITED STATES ATTORNEY'S OFFICE
915 LAFAYETTE BOULEVARD
BRIDGEPORT, CT 06604
(203) 696-3000
(203) 579-5575 (fax)

## CERTIFICATE OF SERVICE

This is to certify that I caused a copy of the foregoing to be sent to the following by first-class mail on November 23, 2005:

Francis L. O'Reilly, Esquire
O'Reilly & Shaw
87 Ruane Street
Fairfield, CT 06430

This is also to certify that a courtesy copy of the foregoing was hand-delivered on November 23, 2005 to:

The Hon. Janet C. Hall
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

U.S. Probation Office
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

_____
PAUL A. MURPHY
ASSISTANT UNITED STATES ATTORNEY